M. H. Jacobs v. Commissioner.
M. H. Jacobs v. Commissioner
Docket No. 25524.
United States Tax Court
1952 Tax Ct. Memo LEXIS 139; 11 T.C.M. (CCH) 739; T.C.M. (RIA) 52224; July 10, 1952
*139 Abner E. Hughes, Esq., for the petitioner. Jackson L. Bailey, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against the petitioner in the amount of $145.91 for the year 1947. The question presented is whether petitioner is entitled to a deduction of $666.60, half as a bad debt and the other half as a business loss. Findings of Fact Petitioner is an optometrist. He resides in Ocean Springs, Mississippi, and maintains his office or place of business at Pascagoula, Mississippi. He filed his income tax return for 1947 with the collector of internal revenue at Jackson, Mississippi. He keeps his accounts and files his income tax returns on a cash receipts and disbursements basis. Prior to May 1946, petitioner lived, and practiced his profession in Shreveport, Louisiana. During the early part of 1946, he was employed by the Southern Optical Company and by Dr. E. C. Reiber, both at Shreveport. In the latter part of April he decided to establish, or participate in establishing, a wholesale optical laboratory for the purpose of grinding lenses on doctors' prescriptions. It *140 was his intention to deal directly with the medical profession. The business was to be known as the Tri-State Optical Company, sometimes referred to herein as Tri-State. Tri-State was financed by the proceeds of a $2,000 note in favor of the Continental-American Bank & Trust Company, of Shreveport, and some personal funds of the petitioner. Petitioner furnished some machinery which he then owned and some new equipment was purchased from the funds described above. Petitioner's brother-in-law, Harold Swanberg, who was then residing in petitioner's home, was to be associated with him in the business. Swanberg originally lived in Chicago, Illinois, and had been drafted into the army in 1940, at the age of 18. He was discharged in the latter part of 1945, or early in 1946. He was eligible for a "G.I." loan and the application for the $2,000 loan with the Shreveport bank was made by him. The bank would not make the loan on Swanberg's signature alone, and petitioner became a co-signer of the note. Swanberg had not previously been in business and had no background in the optical business. The $2,000 note was dated April 16, 1946, and was payable in thirty-six consecutive monthly installments, *141 starting May 16, thirty-five installments being at $55.55 and the final installment at $55.75. According to a notation appearing on the note, the proceeds of the loan were paid to petitioner. Tri-State started operations about May 1, under the management and direction of the petitioner. Petitioner planned to train his brother-in-law in the business. There were no other employees. About the middle of May, petitioner decided that the business would not be successful and on May 24 he moved his family to Mississippi. Except for the bank, there were no creditors. In August of 1946, petitioner sent a truck to pick up the material and equipment of Tri-State. The petitioner himself did not return to Shreveport. No books or records were kept of the operations carried on under the name Tri-State and no income tax or information return was filed under its name to cover the period of its operations. Petitioner made the payments on the $2,000 note as they became due, the final installment being paid on April 18, 1949. During 1947 he made twelve payments of $55.55 each, or the total of $666.60. In his original income tax return for 1946, petitioner reported as gross income $500 from Southern *142 Optical Company, $110 from Dr. E. C. Reiber, and $3,014.18 from Dr. L. O. Embrey, of Laurel, Mississippi. He also filed an amended return for 1946, in which the compensation received from Dr. L. O. Embrey was shown as $3,553.24. On both the original and amended returns, he claimed a loss deduction of $1,546.92 covering the operations of Tri-State. In a schedule attached to the original return, the receipts of Tri-State were shown as $450 and operating expenses as $1,986.92, as follows: Receipts
$450.00
Operating Expenses: Supplies
$1,495.15
Maid & Janitor
6.75
Express, Freight,
Etc.
74.50
Stamps & Stationery
30.94
Rent
250.00
Interest on Loan
6.67
Telephone
26.79
Gas Company
10.00
Insurance
69.24
Power Company
14.68
Box Rent
2.20
$1,986.92
$1,986.92
450.00
$1,546.92
Loss
On his return for 1947 the petitioner claimed a deduction described as "Obligation (Losses) - Tri-State Optical" of $660. The deduction so claimed was disallowed by the respondent in determining the deficiency herein. Opinion In the original petition herein the claim was that petitioner was entitled to a bad debt deduction of the $666.60 paid *143 in 1947 on the note to the bank. In an amended petition the deduction is claimed half as a business loss and half as a business bad debt, and though it is alleged that the entire capital of Tri-State "was expended during 1946, and the partnership dissolved" and that the $666.60 in question "represents in part a fully deductible business bad debt and in part a fully deductible business loss in the calendar year 1946," the deduction is claimed for 1947, because it was in that year that petitioner paid the $666.60 in question on the note at the bank. To the extent that the claim is a claim of a business loss resulting from the operations of Tri-State, we think it clear, and hold, that such loss as was sustained was sustained in 1946, not 1947, and is not deductible in the latter year, even though the loan made to procure money for establishing and operating the business was repaid in 1947, instead of 1946. The business of Tri-State, whether it was or was not a business separate and apart from petitioner's individual operations, began in 1946 and ended in 1946. Losses sustained with respect thereto were 1946 losses. Edwin R. Crawford, 11 B.T.A. 1299; see also Estate of L. O. Koen, 14 T.C. 1406.
*144 On the record made, the bad debt claim of $333.30 must also be denied. In the first place, petitioner's course of conduct rather strongly indicates that Tri-State was intended to be and was his personal venture. When the loan was obtained at the bank, it was petitioner who received the proceeds thereof, and when the business proved to be a failure, petitioner took full benefit of the operating loss as a deduction in his personal income tax return. Although petitioner was quite vague as to the fate of such new equipment as was purchased for the Tri-State operation, so far as appears, it was he who received such supplies and equipment as remained. We have been furnished with no balance sheet or financial statement, and are unable to say how near the petitioner came to being made whole through the deduction taken on his 1946 return and the recovery of supplies and equipment. We are not advised as to what understanding or settlement, if any, petitioner and Swanberg had when petitioner moved to Mississippi in May of 1946. There is some suggestion that Swanberg continued operation of the business. This we gravely doubt, since petitioner testified that Swanberg had had no prior business *145 experience and no background whatever in the optical business. It seems hardly likely that he could continue a business which in the hands of an experienced man like petitioner had proven to be a failure. Assuming, however, for the purposes here, that Swanberg was liable to the extent of fifty per cent on the note at the bank and that an indebtedness aggregating $333.30 did arise in favor of petitioner in 1947 as he paid the note, we still are unable to conclude on the record made that petitioner has shown that the debt was worthless. On his own testimony, the petitioner made no effort to locate Swanberg and obtain from him any part of the payments as they became due at the bank. Neither did he undertake to learn Swanberg's whereabouts or whether he was gainfully occupied. Swanberg was his brother-in-law and we do not think it unlikely that he could have learned these things nor unreasonable to expect him to do so, if his right to such a deduction is to be established. In short, the petitioner has shown by his own testimony that he did not know whether the debt, if a debt did arise, was worthless or not. The bad debt claim is accordingly denied. Decision will be entered for the respondent. *146